**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VINCENT BARBATO,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:21-732** |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **PROGRESSIVE SPECIALTY** | | |
| **INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Presently before the court is Progressive Specialty Insurance Company's (Progressive) motion for summary judgment. (Doc. 26). Progressive filed a brief in support of its motion, (Doc. 27); Plaintiff Vincent Barbato filed a brief in opposition, (Doc. 29); and Progressive replied, (Doc. 30). Barbato brings this one-count lawsuit against Progressive for its alleged bad faith in negotiating Barbato's underinsured motorist claim. (Doc. 19, Amended Complaint).  Progressive's motion raises the issue of whether the record demonstrates bad faith by Progressive in negotiating Barbato's insurance claim. As explained below, Barbato has failed to meet his burden of proof of bad faith by clear and convincing evidence; thus, the court will **GRANT** summary judgment.

I.   **FACTUAL BACKGROUND**[1]

With respect to this motion for summary judgment, the essential, undisputed facts are as follows.[2] Barbato was involved in a motor vehicle accident on September 1, 2017. At the time of the accident, he was insured by an automobile insurance policy issued by Progressive (the "Policy"). The Policy provides up to $15,000 in underinsured motorist coverage, pursuant to which Progressive is obligated, assuming Barbato pays his premiums, to

---

[1] The factual background of this Memorandum is taken from the parties' submissions to the extent they are consistent with the evidence in the record. (Docs. 26–30).

[2] In his reply to Progressive's statement of material facts, Barbato repeatedly cites *Nanty-Glo v. American Surety Co.*, 163 A. 523 (Pa. 1932), asserting that "[Progressive's] attempts to rely upon testimony of its own witnesses in seeking summary judgment is barred by the *Nanty-Glo* rule." (*See* Doc. 28). Barbato's citation to *Nanty-Glo* is misplaced. *See Oum v. Dougherty*, No. 20-CV-1970, 2021 WL 2036650, at *2 (E.D. Pa. May 21, 2021). "Whatever effect the *Nanty-Glo* rule may have on state practice, reliance on this rule is misplaced in the instant federal case, as courts in this circuit have consistently found that this state-law procedural rule has no application to motions for summary judgment in federal court." *Seeley ex rel. Shepard v. Derr*, No. 4:12–CV–917, 2013 WL 3776424, at *3 (M.D. Pa. July 17, 2013) (citing *Schmitt v. State Farm Ins. Co.*, Civ. A. No. 09–1517, 2011 WL 4368400, at *13 (W.D. Pa. Aug. 12, 2011); *NGM Ins. Co. v. Stoltzfus Constr., LLC*, Civ. A. No. 09–CV–01717, 2011 WL 397667, at *5 (M.D. Pa. Jan. 10, 2011); *Tarlecki v. Mercy Fitzgerald Hosp.*, Civ. A. No. 01–1347, 2002 WL 1565568, at *1 n.1 (E.D. Pa. July 15, 2002)). "Indeed, it is well-settled that the court may rely upon testimonial evidence in reaching a decision on a summary judgment motion." *Id.* (citing *Waskovich v. Morgano*, 2 F.3d 1292 (3d Cir. 1993)). Federal Rule of Civil Procedure 56(c) "plainly contemplates" the use of testimonial evidence to support a motion under that rule. *Id.* "Therefore, in resolving this motion we can, and must, consider what the undisputed testimonial evidence shows." *Id.*

pay for damages that Barbato is legally entitled to recover from the owner or

operator of an underinsured motor vehicle because of bodily injury:

> (1)  sustained by an insured person;
> (2)  caused by an accident; and
> (3)  arising out of the ownership, maintenance, or use of an underinsured motor vehicle.

(Doc. 26-1, ¶5).

On December 1, 2020, Barbato's counsel called Progressive and

requested Progressive open an underinsured motorist claim related to the

September 1, 2017, accident. His claim was assigned to Kimberly Kyack, an

experienced claims professional of over 20 years who has been employed

by Progressive since July of 2020. According to the "Claim Notes" submitted

by Progressive as an exhibit to its motion, the admissibility of which Barbato

does not contest, Ms. Kyack proceeded to review Barbato's claim on

December 2, 2020. (Doc. 26-4). In her review, Kyack considered the facts of

the accident and noted that the accident occurred while Barbato was driving

straight in a left-turn-only lane, and the other driver made a left turn from the

right-hand lane. Based on those facts, Kyack noted she believed Barbato

and the other driver were each 50% at fault for causing the accident.

Furthermore, Kyack noted Progressive to date had already paid Barbato

$2,992 of his $5,000 in first party medical benefits relating to his alleged neck

injury. Finally, Kyack noted in her review that, according Barbato's counsel,

- 3 -

the other driver involved in the accident has $25,000 in bodily injury liability coverage.

Following her initial review, Kyack left a voicemail for and sent a letter to Barbato's counsel on December 3, 2020, requesting medical records, wage loss information, and an executed medical authorization. Kyack does not have medical training herself, but she does have the ability to obtain expert opinions on medical matters if necessary as part of her job at Progressive. Moreover, Kyack's deposition revealed that during her handling of Barbato's claim she did not speak to Mr. Barbato or the other driver or retain any experts to help her review Barbato's medical records. (Doc. 29-1 at 23–24). The next day, Kyack had a telephone conversation with Barbato's counsel during which he advised Kyack that the other driver's insurer had tendered its $25,000 liability limits; then Kyack emailed Barbato's counsel requesting copies of the third-party settlement documents. Barbato's counsel sent a letter to Kyack enclosing Plaintiff's medical records December 15, 2020; in the same letter, Barbato's counsel requested consent to settle with the driver of the other vehicle involved in the September 1, 2017, accident. Kyack gave her consent on January 4, 2021, and agreed to waive Progressive's subrogation interest against the other driver. Kyack reviewed Barbato's medical records, then on January 6 and 7, 2021, she exchanged

- 4 -

multiple emails back and forth with Barbato's counsel regarding the completeness of the records. On January 13, 2021, Kyack reviewed additional records received from Barbato and noted they were duplicative of the records she had already reviewed.

On January 15, 2021, Kyack discussed Barbato's underinsured motorist claim with her supervisor, Laurie Pellicore. Kyack noted that she would revise her liability assessment for the 2017 accident to 60% against the other driver and 40% against Barbato because the other driver was making a left turn and likely had a greater duty. The same day, Kyack completed her evaluation and noted several factors relevant to valuing Barbato's claim:

> (1)   With respect to the accident, ""[Barbato] was driving straight in left turn only lane & [the other driver] was making left from the right lane & not using dedicated left turn lane . . . revw'd liab w/ casualty mgr. It is believed a fact finder or jury will place majority negligence on [the other driver] for having a greater duty as [driver] making the left turn."
>
> (2)   Barbato was diagnosed with a C6-7 protrusion, radiculitis, and right shoulder pain.
>
> (3)   Barbato had received three cervical injections and ten physical therapy visits such that Kyack believed the limited tort threshold in the policy would be breached.
>
> (4)   Barbato had not exhausted his medical benefits of $5,000 such that there did not appear to be any out-of-pocket medical expenses.

(5)    Barbato had not presented any evidence of wage loss.

(Doc. 26-1, ¶¶31–35). Accordingly, Kyack appraised the total value of Barbato's injury claim at $30,000 to $40,000. She then reduced the value by 40%, to a range of $18,000 to $24,000, to account for Barbato's share of fault for causing the accident. She then subtracted the tort credit of $25,000 to account for the settlement Barbato received from the driver of the other vehicle, bringing the value of Barbato's claim to the range -$7,000 to -$1,000. Kyack then requested authority from Pellicore, which was granted, to settle the claim for up to $7,500 to account for Progressive's potential future defense costs arising from the claim.

On January 20, 2021, Kyack called Barbato's counsel and offered $3,000 to settle Barbato's claim. In her deposition, Kyack explained she initially offered $3,000 because she "felt that it was a good middle point," and she "was trying to extend an offer to Mr. Barbato even though [she] felt that the value of his claim did not exceed the tortfeasor credit [of $25,000]; so with having a range up to 7500, [she] felt that that was a fair place to begin the range."[3] During the telephone conversation with Barbato's counsel,

---

[3] (Doc. 29-1 at 44–45). In the same deposition, as Barbato points out, Kyack acknowledged that part of her job is to treat Progressive insureds fairly and not place Progressive's interests above those of the policyholder. (Doc. 29-1 at 45).

Kyack explained she believed Barbato had some liability for causing the accident and that she would obtain a transcript of Barbato's initial recorded statement for counsel's review. Barbato's counsel asserted if Progressive was not willing to pay the full $15,000 policy limit, counsel would file suit. The same day, Kyack requested a transcript of Plaintiff's September 1, 2017, recorded statement provided to Progressive. Kyack reviewed Barbato's statement and noted that in the statement, taken the same day as the accident, Barbato reported that he was not injured in the accident. Kyack further noted that Barbato reported that he intended to go straight through the intersection using the left-turn-only lane.

On January 26, 2021, Kyack emailed Barbato's counsel a copy of the recorded statement and requested that counsel call her to discuss the claim; to which Barbato's counsel replied, "I am just going to move forward to place this into suit." On February 2, 2021, Kyack reviewed the claim again with Pellicore which apparently led to her to make some adjustments to her evaluation of Barbato's claim. She noted in her "Claim Notes" (1) the liability apportionment in Barbato's case would depend on the credibility of the parties; (2) she would update her evaluation to reflect that Plaintiff was 25% at fault for the accident, "in an attempt to resolve the claim," (Doc. 26-1, ¶53); and (3) she would also update her defense cost estimate to include the cost

of deposing the other driver involved in the accident; then she updated the evaluation accordingly. Kyack's evaluation of Barbato's claim remained $30,000 to $40,000, which she reduced by Plaintiff's 25% fault to $22,500 to $30,000. Subtracting the $25,000 credit from the other driver's insurance, the evaluation rage was -$2,500 to $5,000; adding future anticipated defense costs of $7,500 to $10,000 brought the claim range to a maximum of $15,000 if one added the high end of the evaluation to the high end of future anticipated defense costs. On the same day, Kyack requested authority from Pellicore to settle the claim for up to $15,000, Pellicore granted the request, and Kyack left a voicemail for Barbato's counsel. She left another voicemail the next day, February 3; and another voicemail on February 5.

On February 5 Kyack emailed Barbato's counsel with an offer to settle for $7,500 and requested a call to discuss. Barbato's counsel responded with an email stating he was placing the matter into litigation. Kyack responded via email, "I remain hopeful we could reach resolution of this matter without the need for litigation. Please call me when you get a chance." Kyack did not receive a response. On February 11 she left a voicemail for Barbato's counsel; then she left another voicemail on March 5. On March 16, Kyack sent an email requesting Barbato's counsel contact her to resolve the claim. Barbato's counsel responded that day, "[W]e are in the process of getting

the complaint filed." Kyack responded, "I would still like to discuss settlement of [] Barbato's underinsured motorist claim. Please contact me if you would like to continue efforts in resolving this matter." Barbato's counsel did not respond via email or telephone; instead, Barbato filed the instant action on March 22, 2021. On March 31 Progressive's defense counsel emailed Barbato's counsel and tendered the underinsured motorist policy limits of $15,000.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F.Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the

judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of

an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

Finally, the court is sitting in diversity resolving a matter of state law in this case; thus, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

## III.   DISCUSSION

Barbato brings this claim against Progressive under Pennsylvania law asserting Progressive acted in bad faith toward him in handling his underinsured motorist claim. Under Pennsylvania law, an insured party can receive punitive damages and other relief if the insurer acts in bad faith toward the insured party. *See* 42 Pa.C.S.A. §8371. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

    (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

    (2) Award punitive damages against the insurer.

    (3) Assess court costs and attorney fees against the insurer.

Barbato, as the plaintiff, has the burden of establishing Progressive acted in bad faith, which requires Barbato to demonstrate by "clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). As to Barbato's burden, a mere preponderance of the evidence is not enough; rather, he must prove bad faith by clear and convincing evidence. *See id*. This requires Barbato to show, at trial and to defeat summary judgment, that the evidence is "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[] acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004); s*ee also Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (At the summary judgment stage, the plaintiff's burden is "commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial."). "Accordingly, [Barbato] carries a heavy burden to defeat summary

judgment." *Merrone v. Allstate Ins. Co.*, 2019 WL 5310576, at *5 (W.D. Pa. Oct. 21, 2019).

"Pennsylvania law defines bad faith in insurance actions as any frivolous or unfounded refusal to pay proceeds of a policy[;] and [b]ad faith extends not just to an insurer denying a claim[] but also to the insurer's other actions, such as investigation or failing to communicate with the insured." *Fuentes v. USAA Gen. Indemnity Co.*, No. CV 3:19-1111, 2021 WL 1225934, at *10 (M.D. Pa. Apr. 1, 2021) (quoting *Merrone*, 2019 WL 5310576, at *5) (internal quotation marks omitted). In any case, the standard for measuring the conduct of an insurer in handling an underinsured motorist claim asks "whether the insurance company has a reasonable basis for its position or acted in reckless disregard of the absence of a reasonable basis." *Condio v. Erie Ins. Exch.*, 2006 PA Super 92, ¶ 19, 899 A.2d 1136, 1145 (2006) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa. Super. 108, 124, 649 A.2d 680, 688 (1994)).

Turning to this case, the court notes that the present record does not contain many disputed facts. The facts underlying Barbato's underinsured motorist claim related to the car accident—aside from the percentage of fault that should be assigned to Barbato for the incident—are undisputed. Notably, the fact that Barbato proceeded straight from a left-turn-only lane

just before the accident, which demonstrates Barbato's partial fault in the incident, is not genuinely disputed.[4] Moreover, the steps Kyack took to review and process Barbato's claim are largely undisputed; and the responses and lack thereof of Barbato through his counsel to Kyack's attempts at settlement are largely undisputed. The dispute here, then, is a legal one: whether Kyack's conduct as Progressive's employee amounts to bad faith. Thus, this is an appropriate case for summary judgment.

Starting with the moving party, Progressive principally argues that a genuine dispute over the value of an insured's claim for underinsured motorist benefits, which it says is what occurred here, is not insurance bad faith under Pennsylvania law. (Doc. 27). To support its argument, Progressive marshals a litany of cases applying Pennsylvania law which demonstrate that "a disagreement over the amount of a settlement of [an underinsured motorist claim] . . . is not unusual," and "the failure to immediately accede to a demand for the policy limit cannot, without more,

---

[4] Barbato's citation to his state complaint for the proposition that on the date of the incident Barbato "was lawfully operating [his car] in a southerly direction in the left-hand lane of Route 209 . . . when his vehicle was struck" by the other driver does not raise a genuine dispute as to whether he went straight from the left-turn-only lane. Progressive points to multiple pieces of evidence in the record that demonstrate Barbato was traveling straight from the left-turn-only lane when he was hit, including Barbato's own statement just after the incident, such that no rational jury could find otherwise on this record.

amount to bad faith." *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012) (plaintiff could not demonstrate bad faith when State Farm "promptly opened a claim at [the plaintiff's] request, assigned an adjuster within two days, consented to settlement with the tortfeasor's insurance company, waived subrogation, made an initial settlement offer, and issued payment for the initial offer.") (citing *Johnson v. Progressive Ins. Co.*, 2009 PA Super 255, ¶ 15, 987 A.2d 781, 785 (2009) (stating that "[t]he underlying facts involve nothing more than a normal dispute between an insured and insurer over the value of an [underinsured motorist] claim ... [a] routin[e] [scenario] in the processing of an insurance claim.")). In addition, "it is well settled that genuinely disputing causation [of plaintiff's injuries] and value [of plaintiff's insurance claim] is not tantamount to bad faith." *Castillo v. Progressive Ins.*, No. 3:19-CV-1628, 2021 WL 963478, at *6 (M.D. Pa. Mar. 15, 2021). Thus, the fact that Barbato disputes the value Kyack assigned to his underinsured motorist claim, which turned in large part on the percentage of fault attributable to Barbato in the accident, does not demonstrate insurance bad faith under Pennsylvania law.

Barbato retorts that "the record clearly demonstrates Progressive, acting through [] Kyack, failed to act in good faith and engaged in a frivolous or unfounded refusal to pay proceeds of a policy." (Doc. 29). However, the

specific conduct cited by Barbato to demonstrate bad faith is either unsupported by the record in this case or falls squarely within the conduct the Third Circuit says does not amount to bad faith. Barbato first complains that "Ms. Kyack initially had settlement authority up to $7,500.00, but only offered $3,000.00 to [] Barbato in settlement of his underinsured motorist claim." But courts in this circuit and Pennsylvania have repeatedly held "an insurer does not act in bad faith 'merely because [it] makes a low but reasonable estimate of an insured's damages.'" *Green v. State Farm Mut. Auto. Ins. Co.*, No. 3:20-CV-1534, 2021 WL 1964608, at *3 (M.D. Pa. May 17, 2021) (citing *Smith*, 506 F. App'x at 136)). Moreover, Barbato does not offer any evidence to suggest Kyack's initial valuation of his claim in the range of -$7,000 to -$1,000 before she added potential defense costs was unreasonable. Barbato mistakenly claims "[t]here is no dispute" that Barbato's claim had a value equal to or exceeding his policy limit of $15,000, since Progressive tendered that much after he filed suit. But even when viewing this fact in the light most favorable to Barbato, that Progressive ultimately tendered $15,000 to Barbato to settle this suit does not demonstrate that his claim was clearly worth that much, let alone that the initial $3,000 offer was unreasonable.

Next, Barbato asserts that after Kyack offered $3,000, "in an attempt to subvert her delay tactics, Ms. Kyack updated her liability analysis as an excuse for seeking additional settlement authority." (Doc. 29). Barbato does not cite any evidence for the proposition that Kyack updated her liability analysis for Barbato's claim "to subvert her delay tactics" or "as an excuse for seeking additional settlement authority," nor does the record invite such an inference. According to Barbato, the record demonstrates Kyack updated her liability analysis in bad faith because she never claimed she did not have enough information when she valued the claim in the first instance, nor did she request additional information in order to update the evaluation. However, the mere fact that Kyack updated the valuation based on an apportionment of less fault to Barbato for the accident does not demonstrate the first valuation was unreasonable or that Kyack updated the valuation for some nefarious purpose. Kyack's "Claim Notes," (*see* Doc. 26-4), suggest that upon further reflection on the claim with her supervisor, and after Barbato's counsel's obstinate refusal to settle for anything less than the full $15,000 policy maximum, Kyack believed the liability apportionment for the accident could still be 60/40, or it could be 70/30 or 80/20 "depend[ing] on the credibility of the parties[,] *etc*." (Doc. 26-4 at 27). It is apparent based on the timeline that the reevaluation was prompted by Barbato's counsel's

- 17 -

refusal to accept the initial $3,000 offer or anything less that the policy maximum.

Moreover, even if the initial 60/40 apportionment was incorrect, that would still not demonstrate bad faith since Progressive "need not demonstrate its investigation yielded the correct conclusion, or that its conclusion more likely than not was accurate" to show it had a reasonable basis for its $3,000 initial offer. *Krisa v. Equitable Life Assur. Soc.*, 113 F.Supp.2d 694, 704 (M.D. Pa. 2000) (quoting *Cantor v. The Equitable Life Assurance Soc'y*, No. Civ.A. 97–CV–5711, 1999 WL 219786, *3 (E.D. Pa., April 12, 1999)). "Rather an insurance company simply must show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Id.* The record in this case reveals Kyack's investigation of Barbato's claim was sufficiently thorough to yield a reasonable basis for Progressive's actions in this case. As explained in detail above, over the course of several weeks Kyack reviewed Barbato's claim, reviewed the facts of the underling accident, reviewed Barbato's alleged injuries, requested and reviewed Barbato's medical records from counsel, requested and reviewed third-party settlement documents, discussed the claim with her supervisor on multiple occasions, considered Barbato's recorded statements following the accident, considered potential defense

costs, and contacted Barbato's counsel on numerous occasions to discuss settlement—a majority of the contacts were met with either clear refusal to negotiate or silence. Barbato attempts to impeach Kyack's investigation by pointing out that she did not speak to him, his medical providers, the other driver, nor any medical experts in reviewing his claim. However, Barbato does not attempt to explain why review of his claim called for such additional investigation in this case, nor does he cite authority for the proposition that such additional investigation was required under Pennsylvania law. Thus, the court finds that, on this record, Barbato has not demonstrated by clear and convincing evidence that Kyack's investigation was not sufficiently thorough to yield a reasonable foundation for Progressive's multiple offers to Barbato within its settlement range.

And thus, the court will grant Progressive's motion for summary judgment since Barbato failed to produce sufficient evidence, let alone clear and convincing evidence, to show Progressive lacked a reasonable basis in investigating his underinsured motorist claim and making multiple offers within its settlement range.

## IV.   CONCLUSION

In light of the foregoing, the court will **GRANT** Progressive's motion for summary judgment. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 28, 2023**
21-732-02